UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERT J. VERA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-04-1116 |
| | § | |
| DIANA BARRERA MULET, | § | |
| JAMES LaVOIS, BARBARA BRADY | § | |
| GUPTA, JOSEPHINE N. MORGAN, | § | |
| ERASMO TERAN, KAYE E. | § | |
| STRIPLING, ABELARDO | § | |
| SAAVEDRA,  and HOUSTON | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM, RECOMMENDATION, AND ORDER**

This employment dispute is before the court on Defendants' motions to dismiss,

which have been referred from the district court for report and recommendation.[1]  Also

---

[1]     *See* Defendants Mulet, LaVois, Teran, and Stripling's Rule 12(b)(6) Motion to Dismiss for
Failure to State a Claim (Dkt. 57), Plaintiff's Response (Dkt. 61), Defendants' Reply (Dkt.
71), Plaintiff's Supplemental Opposition (Dkt. 74), and Defendants' Supplemental Motion
(Dkt. 87); Defendants Josephine N. Morgan and Barbara Brady Gupta's Motion to Dismiss
Under Rule 12(b)(6) (Dkt. 68), Plaintiff's Response (Doc. 72), and Morgan and Gupta's
Supplement (Dkt. 98); HISD's Second Rule 12(b)(6) Motion to Dismiss (Dkt. 78), Plaintiff's
Response (Dkt. 81), HISD's Reply (Dkt. 86), HISD's post-hearing Supplement (Dkt. 93),
and Plaintiff's post-hearing Memorandum (Dkt. 96).

before the court is plaintiff's motion for leave to amend (Dkt. 95), which defendants oppose (Dkt. 97).[2]

Having considered the parties' submissions, legal authorities, and oral argument, the court grants plaintiff's motion for leave to amend, and recommends that defendants' motions to dismiss be granted in part and denied in part.

### Plaintiff's Motion for Leave to Amend

After the hearing on March 31, 2005, plaintiff moved for leave to file a Second Amended Complaint. This motion, filed long after the deadline for amendments set forth in the scheduling order governing this case, is governed by Rule 16 of the Federal Rules of Civil Procedure. Rule 16 sets a higher standard for granting leave than the liberal amendment standards of Rule 15. Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause." The Fifth Circuit has elaborated on this standard: "In determining good cause, we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters., LLC*

---

[2]     *See also* Plaintiff's reply (Dkt. 99). The district court referred the motion to this court for disposition and/or recommendation (Dkt. 100).

*v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990))).

Plaintiff seeks to add factual allegations relating to matters that have been within the plaintiff's personal knowledge since the inception of this case. The only explanation for the delay is that plaintiff did not share the additional facts with counsel until after the hearing. This explanation is weak. However, the amendment is vitally important to plaintiff, who is facing potential dismissal of his case for failure to plead an adverse employment action. The court recognizes defendants will suffer some prejudice if the amendment is allowed. Defendants relied upon the First Amended Complaint in filing extensive motions and briefs and in making arguments to the court at the March 31 hearing; on the other hand, defendants have been protected from discovery to date. Moreover, denying the motion to amend at this stage would represent a false economy, since the ordinary remedy for a successful 12(b)(6) motion is dismissal with an opportunity to replead. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (given the pull to decide cases on the merits, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case).

Under the circumstances, the court concludes that the interests of justice and the standards of Rule 16 require that leave to amend be granted.  To avoid further delay, defendant's motions to dismiss will be considered in light of the new Second Amended Complaint.

## Defendants' Motions to Dismiss

**A.     Factual Allegations**[3]

Plaintiff Albert Vera taught at Jefferson Davis High School for 38 years before his transfer to Jones High School prior to the 2003-04 school year.  Vera alleges that he was targeted for removal from Jefferson Davis because he spoke out about maintaining high standards for Hispanic students.  On an unspecified occasion, Vera complained to unnamed individuals that Diana Barrera Mulet,[4] principal of Jefferson Davis, had removed older and experienced teachers from that school in order to lower standards for Hispanic students.  During the 2001-02 and 2002-03 school years, Mulet demanded that Vera reduce the substance and standards of his government class, because she was concerned that Hispanic students could not perform as well as others and might drop out if the course was too difficult.  Mulet told Vera that if he was not

_____

[3]     These allegations from the Second Amended Complaint are accepted as true for the limited purpose of these Rule 12(b)(6) motions.

[4]     Mulet is sued in her individual and official capacity.

willing to change his teaching, he must resign, retire, or request a transfer from Jefferson Davis.  Mulet placed Vera on an "Intervention Plan for Teachers in Need of Assistance" for the period December 9, 2002 through March 13, 2003, imposing unspecified obligations on Vera which he considered unnecessary and demeaning. Vera completed the assistance plan under protest.

On March 27, 2003, Kaye E. Stripling[5], then general superintendent of HISD, received an e-mail, copied to James LaVois,[6] then superintendent of the North Central Administrative District of HISD (which included Jefferson Davis). The e-mail was from "a scared student" and alleged improper conduct of a sexual nature by Vera toward female students. Vera claims "on information and belief" that the e-mail was sent by Mulet, and that Stripling and LaVois must have known the e-mail was not authentic; nevertheless they joined the scheme to force Vera out of Jefferson Davis, and ordered an investigation into the sexual harassment allegation.

Mulet informed Vera about the student's e-mail allegation, and directed him not to return to Jefferson Davis until the investigation was complete.  Josephine N. Morgan,[7] manager of the Equal Employment Opportunity Department of HISD,

---

[5]     Stripling is sued in her individual capacity only.

[6]     LaVois is sued in his individual capacity only.

[7]     Morgan is sued in her individual capacity only.

directed the investigation.   On March 31, 2003, Barbara Brady Gupta,[8] an equal employment opportunity specialist for HISD, interviewed Vera at the district's Equal Employment Opportunity Department office.   Vera was given a hard copy of the e-mail, but not an electronic copy so that he could investigate its source.

As part of the investigation, Morgan and Gupta had the students at Jefferson Davis complete a survey on sexual harassment.   The survey results included information about Vera hugging and patting students on the back or shoulder, as well as some individual perceptions of unfair treatment of students by Vera.   Vera believes that the defendants should have been aware that hugs and pats are a common way of showing affection for people of Hispanic background.

After the investigation, Morgan and Gupta concluded that they could not find evidence of actual harassment but that it was more likely than not that "Vera's long-standing practice of physical demonstrations of affection toward some of his female students has had the effect of creating an appearance of impropriety in his classroom and the widespread perception that he engages in sexual harassment of female students."[9]

---

[8]      Gupta is sued in her individual capacity only.

[9]      Second Amended Complaint, ¶ 4.84.

Vera was informed of the results of the investigation on April 11, 2003, and he requested to return to his job at Jefferson Davis. His request was denied. Vera called LaVois's office for a copy of the report, but was told he would have to wait to obtain it from the superintendent of the newly consolidated North Administrative district, Erasmo Teran.[10]  Vera alleges that LaVois and Teran delayed providing Vera a copy of the report in order to frustrate Vera's efforts to pursue a grievance to clear his name and to frustrate Vera's efforts to return to Jefferson Davis. Vera was transferred to Jones High School for the 2003 school year.

Vera's alleges that while on assignment to the testing center in the spring of 2003, he was forced to unload trucks and carry packages in view of other teachers. Vera further alleges that in order to facilitate the transfer to Jones, Teran and Stripling agreed that half of Vera's salary would be paid out of the district budget. During his first three weeks at Jones, Vera was not given any teaching duties and was assigned to be a hall monitor. Vera later was assigned only two classes instead of the usual six, and was not assigned to teach government. In the second semester at Jones, Vera was assigned to teach history and geography, subjects in which he was not certified. Although not alleged in the complaint, Vera's counsel acknowledged at oral argument that Vera retired from his teaching position after completing the 2003-04 school year.

---

[10]    Teran is sued in his individual capacity only.

7

Vera asserts causes of action against HISD and the individual defendants under § 1983 for violation of his rights of freedom of expression and due process.[11]  Vera also asserts state law causes of action for conspiracy and intentional infliction of emotional distress.   Defendants move for dismissal of all of Vera's claims.

**B.**     **Legal Standards**

**1.**     **12(b)(6) Standards**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).  The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts must be taken as true.  *Id.*  A claim may only be dismissed if the plaintiff is not entitled to relief under any set of facts or any possible theory of recovery that he could prove consistent with the allegations in his complaint.  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002).

---

[11]     Vera also has sued Abelardo Saavedra,  who replaced Stripling as general superintendent of HISD, in his official capacity.  A suit against an official in his official capacity is duplicative of a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, the court does not address independently Vera's claims against Saavedra.

In making this determination, the Court may not look beyond the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Court should "not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996)). The plaintiff's complaint must contain allegations of every material point necessary to sustain recovery. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Statements that merely create a suspicion that the plaintiff may have a right of action do not foreclose a motion to dismiss. *Id.* Furthermore, legal conclusions, conclusory allegations, and unwarranted deductions of fact do not suffice to prevent dismissal. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003).

## 2.    Qualified Immunity Standards

The doctrine of qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity decision requires a two-step analysis. *Id.*; *Williams v. Kaufman Cty.*, 352 F.3d 994, 1002 (5th Cir. 2002). On a motion to dismiss, the Court must first determine whether the facts alleged establish that the public official violated a clearly

established constitutional right. *Linbrugger*, 363 F.3d at 540 (stating summary judgment standard as being whether the facts, undisputed or taken in the light most favorable to plaintiff establish a clearly established constitutional right); *Williams*, 352 F.3d at 1002. If the answer is no, the inquiry is ended. If the answer is yes, the Court must next determine whether the official's conduct was objectively unreasonable under established law. *Linbrugger*, 363 F.3d at 540 (citing *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001); *Williams*, 352 F.3d at 1002. The appropriate inquiry can be summarized as "whether the state of the law [at the time of the violation] gave [defendants] fair warning that their alleged treatment of [plaintiffs] was unconstitutional." *Williams*, 352 F.3d at 1003. An individual defendant's subjective state of mind is irrelevant to the qualified immunity inquiry. *Thomas v. Upshur Cty, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).

## C.   Vera's Claims

### 1.   First Amendment Retaliation

Vera alleges that defendants have retaliated against him in violation of the First Amendment of the United States Constitution. The First Amendment gives every citizen the right to freedom of speech. Section 1983 of Title 42 of the United States Code provides that a person may sue in federal court for an award of money damages

against any person who, under color of state law or custom, intentionally violates the person's rights under the Constitution of the United States.

In order to prevail on his § 1983 First Amendment retaliation claim, Vera must allege and show:

(1)  he engaged in a protected activity;

(2)  he suffered an adverse employment action; and

(3)  there was a causal connection between the protected activity and the adverse employment action.

*Southard v. Texas Brd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997) (citing *Mattern v. Eastman Kodak, Co.*, 104 F.3d 702, 705 (5th Cir. 1997)). Only final decision-makers may be held liable for First Amendment retaliation under § 1983. *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004).

A public employee's speech is protected only to the extent (1) it relates to a matter of public concern, and (2) the interest in exercising free speech outweighs the government employer's interest in promoting efficiency. *Johnson*, 369 F.3d at 830; *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 563 (5th Cir. 2003). The court considers whether the public employee spoke primarily in his role as a citizen or primarily in his role as an employee. *Johnson*, 369 F.3d at 830 n.6 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983). The court looks to the content, form, and context

of speech, as revealed by the whole record, in determining whether speech addressed a matter of public concern.  *Id.*; *Finch*, 333 F.3d at 564.  Only if the speech meets the first prong of the test for protected speech does the court perform the balancing test required by the second prong.  *Johnson*, 369 F.3d at 831.

*__Public concern__*–  Vera alleges that he engaged in protected speech when he objected to school district policies which he perceived as lowering standards for Hispanic students.  Defendants argue that this claim must be dismissed because Vera does not allege sufficiently that he spoke on matters of public concern.  Defendants further argue that in this case Vera spoke out in his role as an employee, not primarily in his role as a citizen.

On its face, the subject matter of Vera's speech cannot be said to fall outside the realm of legitimate public concern.  Maintenance of appropriate educational standards for Hispanic high school students is a worthy topic of debate which potentially transcends the particular employment dispute between this plaintiff and this group of defendants.  Moreover, Vera alleges that he raised these concerns not only in direct discussions with defendant Mulet, the principal of Jefferson Davis, but also in presentations to community groups.

Although the "public concern" issue presents a question of law, the determination requires an analysis of the content, form and context of the speech and

therefore necessarily requires a fact specific analysis. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999). The issue at this stage is not whether Vera can *prove* (or even create a genuine issue of material fact) that he spoke out on a matter of public concern, but whether he has sufficiently *alleged* that he did so. The court concludes the Vera has alleged sufficient facts regarding his protected speech to satisfy this element of his § 1983 claim.

***Adverse employment action***–   Vera appears to be alleging two adverse employment actions: (1) the transfer to Jones High School; and (2) constructive discharge due to intolerable conditions associated with the transfer.[12] Only the transfer decision properly states a claim under § 1983.

The Fifth Circuit recognizes that the definition of adverse employment action under § 1983 may be broader than the "ultimate employment decision" definition applicable under Title VII. *Banks v. East Baton Rouge Parish Sch. Brd.*, 320 F.3d 570, 580 (5th Cir. 2003). However, "not every negative employment decision or event is an adverse employment action that can give rise to a discrimination or retaliation

---

[12]   Although the complaint does not specifically use the words "constructive discharge," a generous construction of the pleading justifies such an interpretation. At oral argument, counsel for plaintiff also argued that the investigation itself was retaliatory. Investigations and false accusations, in themselves, are not adverse employment actions. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998). Thus, the court focuses on Vera's transfer, not the investigation, for purposes of determining whether an adverse employment action occurred.

cause of action under 1983." *Southard*, 114 F.3d at 555.  "Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.*  While undesirable work assignments generally are not adverse employment actions, a transfer can constitute an adverse employment action if it constitutes a demotion. *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

"To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse – such as being less prestigious or less interesting or providing less room for advancement." *Id.*  "[I]n the education context . . . decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)). Although teacher assignments are not generally a proper subject for federal courts, the Fifth Circuit has recognized that transferring a teacher to a new school can give rise to an adverse employment action if the transfer is punitive. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220-21 (5th Cir. 1999) (a transfer coupled with a reprimand constituted an adverse employment action).

14

Vera alleges that, even though his compensation was unchanged by the transfer, the conditions of his employment at Jones were objectively worse than they were at Jefferson Davis and constituted something more than a mere reassignment. Vera alleges there was no position immediately available for him at Jones, and thus he was forced, at least temporarily, to engage in menial tasks such as hall monitoring. While he was eventually given teaching assignments, he was assigned only two classes, neither of which were in an area of his certification. Vera alleges that Mulet, Stripling, and Teran were aware of these conditions at the time of the transfer. The court concludes that Vera's claim sufficiently alleges that his transfer was disciplinary in nature, and tantamount to a demotion. This type of injury is sufficient to state a § 1983 claim.

However, the court further concludes that Vera has not, and cannot, state a claim based on constructive discharge. "Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The test is an objective, "reasonable employee" test, *i.e.* whether a reasonable person in Vera's shoes would have felt compelled to resign. *Id.* at 650; *see Finch*, 333 F.3d at 562. A constructive discharge claim requires a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment."

*Benningfield*, 157 F.3d at 378.  Even discriminatory treatment, without aggravating factors, is not sufficient for constructive discharge.  *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

Vera fails to state a claim for constructive discharge for a very basic reason – he never alleges that the "intolerable" working conditions described in the complaint actually compelled him to resign.[13]  On the contrary, Vera states that he considered quitting at the time of his transfer, but decided instead to accept his transfer so that he could continue his efforts to be reassigned to Jefferson Davis.[14]

At the hearing, Vera's counsel affirmed that Vera ultimately did retire a year later, after completing the 2003-04 school year at Jones.  But by this time, the allegedly intolerable conditions had either largely subsided or completely ceased.  *See Sims v. Brown & Root Indus. Servs., Inc.*, 889 F. Supp. 920, 931 (W.D. La. 1995) (rejecting constructive discharge claim by employee who resigned 70 days after the harassing supervisor was fired), *aff'd* 78 F.3d 581 (5th Cir. 1996); *see generally* Lindemann &

---

[13]    Vera alleges:   "The humiliation and damage to his reputation resulting from the contemporaneous banishment from Jefferson Davis High School and the investigation of sexual misconduct, the humiliation resulting from his being viewed in an assignment where he was required to unload trucks at a warehouse and carry parcels for teachers who had only a small fraction of his experience, and the radical change in his teaching assignment, individually and in combination, rendered intolerable to Mr. Vera the continuation of service as a teacher with the Houston Independent School District, and the circumstances would have been considered intolerable by a reasonable person."  Second Amended Complaint, ¶ 4.119.

[14]    Second Amended Complaint, § 4.118.

Grossman, Employment Discrimination Law (3d ed., 2002 Cum. Supp.), at 655-56 (constructive discharge claim requires "causal nexus between resignation and intolerable working conditions").  There is no allegation that, at the time of his resignation, Vera was still assigned menial tasks such as unloading trucks, carrying parcels to teachers' cars, or acting as hall monitor with no teaching duties.  Nor is there any claim that the sexual harassment investigation at Jefferson Davis had impaired his reputation in the eyes of Jones High School students, parents, or teachers; nor even that anyone at Jones was aware of those events.  Indeed, only one of the working conditions Vera complains of continued past his first semester at Jones – his assignment to teach courses (history and geography) outside the area of his certification.  Certainly, undesirable course assignments are a far cry from the type of intolerable working conditions that could generate a viable constructive discharge claim.  *See Sharp*, 164 F.3d at 933 (undesirable work assignments generally are not adverse employment decisions); *Breaux*, 205 F.3d at 157 (dissatisfaction with teaching assignment generally does not support a constitutional claim).

Therefore, to the extent the Second Amended Complaint attempts to assert a claim for constructive discharge, such claim should be dismissed.

**_Causal connection_**– On this third element of his § 1983 cause of action, Vera's claim falls short as to certain defendants.  Because Vera must show that he was

17

transferred because of his protected speech, only decision-makers with final authority for the transfer decision may be held liable for First Amendment retaliation under § 1983. *Johnson*, 369 F.3d at 830.[15]  Generally, the issue on causation is whether the retaliatory motive of a subordinate employee, such as Mulet, can be imputed to the titular decision-maker for purposes of establishing a causal connection. *Hitt v. Connell*, 301 F.3d 240, 248 (5th Cir. 2002) (the causal connection is not broken if the decision-maker merely rubber stamps the subordinate's recommendation)); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-27 (5th Cir. 2000) (causal connection is not broken if plaintiff can show others influenced or had leverage over the official decision-maker).

Vera does not expressly allege who made the final decision to transfer him from Jefferson Davis to Jones.  However, Vera does allege that principal Mulet, aided by general superintendent Stripling and district superintendent Teran, utilized the investigation report to transfer Vera to Jones, and that these same defendants negotiated the transfer with the principal of Jones (who has not been named as a defendant).  These allegations support the inference that Mulet, Stripling, and Teran are the decision-makers responsible for Vera's transfer.  The causation element has been

---

[15]    It is well-settled that municipal liability occurs only when an official policy causes the plaintiff's injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001).  Thus, HISD is liable for the decisions of its policy-makers.  *See Hitt v. Connell*, 301 F.3d 240, 248 (5th Cir. 2002).

adequately pleaded because Stripling and Teran are alleged to have knowledge that Mulet fabricated the e-mail that precipitated the sexual harassment investigation leading to Vera's transfer.  Accordingly, Vera has met the requirement to plead a causal connection between protected speech and his adverse employment action as to those three individual defendants.[16]

As for EEO officers Morgan and Gupta, nothing in the complaint warrants any inference that either was involved as a final decision-maker in the transfer decision, or had authority to participate in such a personnel decision.  Similarly, LaVois could not be a final decision-maker as to Vera's transfer because he was no longer the superintendent overseeing the district including Jefferson Davis at the time of Vera's transfer.  This is consistent with Vera's Second Amended Complaint, which attributes the transfer decision only to Mulet, Stripling and Teran.[17]  Thus, as to Morgan, Gupta, and LaVois, Vera has not, and cannot, state a claim for First Amendment retaliation.

***Conclusion*** – Vera's claim for First Amendment retaliation against defendants Morgan, Gupta, and LaVois should be dismissed because they were not final decision-makers regarding Vera's transfer.  In addition, any claim based on the allegation of

---

[16]    The court again emphasizes that its ruling is limited to whether Vera has satisfied the pleading requirements of Rule 12(b)(6).  Nothing in this opinion should be construed as an endorsement of the merits or plausibility of Vera's claims, or as a prediction whether such claims could withstand summary judgment.

[17]    Second Amended Complaint, ¶¶ 4.104-4.108.

constructive discharge should be dismissed.  Vera's First Amendment retaliatory transfer claim survives against HISD, Mulet, Stripling and Teran.

### 2.  Due Process

The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond.  *Finch*, 333 F.3d at 562. "Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected."  *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991).  The Supreme Court has held that a governmental entity must accord a public employee effective notice and an informal hearing permitting the employee to give his version of events prior to termination. *Cleveland Brd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 465-66 (5th Cir. 2003).

Vera alleges that because he was not timely provided with a copy of the investigative report, he was unable to pursue a grievance in time to prevent his transfer. Vera further alleges that the defendants acted despite knowing there was no support for the allegations of misconduct.  Defendants contend that Vera has not alleged deprivation of a protected interest sufficient to state a due process claim.

The threshold issue in analyzing Vera's due process claim must be whether Vera has been deprived of a life, liberty, or property interest by the transfer from Jefferson Davis.  Vera does not make an express allegation in this regard, but asserts that "the

acts of the defendants proximately caused serious damage to Mr. Vera's professional reputation and ability to effectively pursue his teaching vocation by having [him] banished from Jefferson Davis High School at the time that an investigation was conducted in a manner that clearly indicated it involved sexual misconduct."[18]  Vera's post-hearing brief clarifies (at p.5) that his claim is based on a deprivation of a liberty interest, not a property interest.

Injury to reputation alone is not a constitutional injury.  *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 n.1 (5th Cir. 1989).  In order to establish a protected liberty interest, Vera must be able to prove that (i) he was discharged, (ii) defamatory charges were made against him in connection with the discharge, (iii) the charges were false, (iv) no meaningful public hearing was conducted pre-discharge, (v) the charges were made public, (vi) he requested a name-clearing hearing, and (vii) his request for hearing was denied.  *Rosenstein*, 876 F.2d at 395-96; *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).

In this case, Vera has not alleged, and cannot allege, the requisite elements of a due process claim.  Vera was not discharged, and the court has already held that Vera's transfer does not rise to the level of a constructive discharge.  In addition, there is no allegation that Vera requested and was denied a name-clearing hearing.  Vera

---

[18]     Second Amended Complaint, ¶ 6.1.

alleges that he was not timely provided a copy of the investigative report, but he was aware of the results of the investigation no later than April 11, 2003, shortly after the report was issued.  For these reasons, Vera's due process claim should be dismissed.

### 3.    Civil Conspiracy

Vera alleges that the individual defendants conspired to deprive him of his constitutional rights.[19]  A claim of civil conspiracy, either under Texas common law or § 1983, requires the allegation that defendants' reached a "meeting of the minds" with the purpose of effecting the goal of the conspiracy.  *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 635  (5th Cir. 2002) (Texas law); *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) (§ 1983).  A conclusory allegation of a conspiracy is insufficient.  *Rodriguez*, 169 F.3d at 222.  Liability on a claim of conspiracy requires an actual violation of civil rights.  *Kaplan  v. Clear Lake City Water Authority*, 794 F.2d 1059, 1065 (5th Cir. 1986).

Defendants argue that the school district and its employees are a single entity, which cannot conspire with itself.  *See Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (holding in § 1985(3) case that school board and its employees constituted single entity that could not conspire with itself); *Clark v. LaMarque Indep. Sch. Dist.*, 184 F.

---

[19]    Defendant asserts this claim only against Defendants Mulet, LaVois, Teran and Stripling (not Morgan, Gupta, or Saavedra (who is sued only in his official capacity)).

Supp. 2d 606, 611 (S.D. Tex. 2002) (same).  Vera responds that there is an exception to this rule when employees act for their own personal gain.

Nothing in Vera's pleading warrants application of the personal gain exception to the single-entity rule.  The exception applies "in rare instances" and is generally applied in cases where an employee derives personal financial benefit independently from his employer.  *See H&B Equip. Co. v. Inter'l Harvestor Co.*, 577 F.2d 239, 244 (5th Cir. 1978). There is no allegation that any individual defendant derived personal gain, financial or otherwise, from the actions of which Vera complains.  Accordingly, there are no grounds to avoid the general rule that school district employees constitute a single entity that cannot conspire with itself.  This civil conspiracy claim should be dismissed.

### 4.    Intentional Infliction of Emotional Distress

Defendants argue that Vera has made only conclusory and therefore insufficient allegations as to each element of this claim. Defendants alternatively argue that the individual defendants cannot be sued on this state law tort claim because Vera has made an irrevocable choice to sue the school district, and thus is barred by TEX. CIV. PRAC. & REM. CODE § 101.106(a) and (e).

Under Texas law, a plaintiff must allege the following elements to assert a claim for intentional infliction of emotional distress:

(1)    the defendant acted intentionally or recklessly;

(2)    the defendant's conduct was extreme and outrageous;

(3)    the defendant's actions caused the plaintiff emotional distress; and,

(4)    the resulting emotional distress was severe.

*Hughes Training Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001); *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993).

Vera's Second Amended Complaint does not state a claim for intentional infliction of emotional distress for multiple reasons.  First, defendants' conduct as alleged by Vera does not rise to the level recognized in Texas courts as extreme and outrageous.  Outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621.  Behavior is not outrageous simply because it is tortious or otherwise wrongful. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

Ordinary employment disputes will not support a claim for intentional infliction of emotional distress. *Twyman*, 855 S.W.2d at 621(citing *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).  In the employment context, "extreme conduct exists only in the most unusual of circumstances." *Id.*  Even where a supervisor abuses her

24

position of power over an employee, the employer is not liable unless the conduct is extreme and outrageous. *Bruce*, 998 S.W.2d at 617. Whether conduct is so extreme and outrageous as to permit recovery is a question of law. *Id.*; *Bradford*, 48 S.W.3d at 758.

Even if Vera's allegation that Mulet sent the e-mail herself is true, only where a supervisor engages in repeated and ongoing harassment does the behavior rise to the level of extreme and outrageous conduct that is utterly intolerable in a civilized community. *See, e.g.*, *Bruce*, 998 S.W.2d at 617 (finding extreme and outrageous conduct where the supervisor "purposefully humiliated and intimidated, and . . . repeatedly put [employees] in fear of [their] physical well-being."). *See Diamond Shamrock Refining and Marketing Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex. 1992) (assuming truth of Mendez's allegations that defendant told all his fellow employees he was a thief and spread this falsity to the community at large, Mendez cannot meet standard of extreme and outrageous conduct). Defendants' here did not engage in ongoing harassment of Vera and, even if wrongful, their conduct hardly treated Vera in a way that is extreme and outrageous under the law.

Second, Vera's allegations of severe emotional distress are conclusory at best. A plaintiff must plead specific facts, not mere conclusory allegations or unwarranted deductions of fact, in order to avoid dismissal for failure to state a claim. *Collins v.*

*Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Severity of distress is an element of the cause of action, not just a matter of damages.  *Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex. App.–Corpus Christi, 1992, writ denied).  "Severe emotional distress" is distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering.  *Id.*  It is something more than "mere worry, anxiety, vexation, embarrassment, or anger." *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (discussing mental anguish).

Given the high standard for "severe" distress under Texas law, the pleading must do more than recite the term, without supporting factual allegations, to state a claim. Vera's pleading fails this test; moreover, Vera's counsel conceded at the hearing that he was not aware of any facts that would allow Vera to meet the standard for severe emotional distress under Texas law.

Finally, this claim also should be dismissed based on the Texas Supreme Court's recent holding in *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446-48 (Tex. 2004).  In that case, the Texas court explained that intentional infliction of emotional distress is a "gap-filler" tort, intended to allow recovery only in those "rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447.  Because the plaintiff's intentional infliction of emotional distress claim was based

26

on the same facts as her sexual harassment claim under Title VII, the plaintiff in *Zeltwanger* could not assert a claim for intentional infliction of emotional distress, even if her harassment claim were not successful. *Id.* The court held, "a plaintiff's failure to establish his or her claim for sexual harassment does not mean that the plaintiff has a claim for intentional infliction of emotional distress. If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Id.* at 448. The Texas Supreme Court reiterated that holding in *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005), noting that it was reversing for the tenth time in six years an intentional infliction of emotional distress judgment because the plaintiff could not meet the exacting standards of that tort. In *Creditwatch*, the Texas Supreme Court again stated that "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies. Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id.* at 816; *see also Sauceda v. Bank of Texas, N.A.*, No. Civ. A.3:04-CV-2201-P, 2005 WL 578474, *3 (N.D. Tex. Mar. 9, 2005) (granting motion to dismiss intentional infliction of emotional distress claim based on same facts as plaintiff's Title VII claim); *Tillison v. Trinity Valley Elec.*

*Coop.*, No. Civ. A.3:03-CV-2480-D, 2005 WL 292423, *2 (N.D. Tex. Feb. 7, 2005) (same).

Here, Vera has asserted a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights. Vera's intentional infliction of emotional distress claim is asserted against the same defendants based on the same facts as his § 1983 claim. Therefore, the claim should be barred pursuant to the Texas Supreme Court's rulings in *Zeltwanger* and *Creditwatch*.[20]

### 5.    Relief Under Texas Law

As his fifth claim for relief, Vera asserts that "to the extent necessary to provide full relief, the court should look to Texas law."[21] Vera does not reference what Texas law he intends to invoke, or what actions by defendants form the basis for the claim. The court has relied upon Texas law where applicable to Vera's state law causes of action. "Relief under Texas law" is not an independent cause of action and should be dismissed as a claim in this case.

---

[20]    In light of these rulings, it is unnecessary to reach defendants' statutory election of remedies defense under § 101.106(a) of the Texas Civil Practice and Remedies Code.

[21]    Second Amended Complaint, ¶ 9.1.

D.     **Qualified Immunity**

Having determined that Vera has stated a claim for § 1983 First Amendment retaliation against defendant HISD, as well as individual defendants Mulet, Stripling, and Teran, the court turns to whether this claim can survive those individual defendants' qualified immunity defense.[22]

As noted in section B.2 above, the qualified immunity determination is a two-step process.  First, the court determines whether the facts alleged establish a violation of a clearly established constitutional right.  *Linbrugger*, 363 F.3d at 540.  Second, the court determines whether the official's conduct was objectively reasonable under established law.  *Id.*  Here, there is no doubt that a public employee's right to engage in speech on a matter of public concern without suffering retaliation is well-established.  *See  Southard*, 114 F.3d at 554, and other cases cited in section C.1 above.

At issue here is whether the individual's actions were objectively reasonable.  While subjective intent generally is not relevant to the qualified immunity determination, in First Amendment retaliation cases the public official's unlawful motivation is an element of the alleged constitutional violation.  *Kinney v. Weaver*, 367 F.3d 337, 372-73 (5th Cir. 2004) (*en banc*); *Thompson v. Vickers*, 26 F.3d 603, 607 (5th Cir. 1994).  In this case, Vera has pled that the individual defendants Stripling and

---

[22]     The court need not reach the issue of qualified immunity as to Morgan, Gupta, and LaVois because Vera did not state a § 1983 cause of action against those defendants.

Teran knew that Mulet fabricated an e-mail accusing Vera of misconduct and then used it as a basis for transferring him to a less desirable position in retaliation for his protected speech on the issue of maintaining standards for Hispanic students.  In light of these allegations, determination of whether these individual defendants actions were objectively reasonable must await summary judgment.

Vera can survive summary judgment only if he can present sufficient evidence to raise a genuine question of material fact as to the retaliatory reason for his transfer. He will not be able to overcome qualified immunity based on the unsubstantiated assertions in his complaint.  *Mace v. City of Palestine*, 333 F.3d 621, 624 n.7 (5th Cir. 2003).  The court recognizes that the qualified immunity issue should be decided at the earliest possible stage of the proceedings.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). However, the court cannot conclude on the basis of the Second Amended Complaint alone that Mulet, Stipling, and Teran are entitled to qualified immunity as a matter of law.

**E.**     **Conclusion, Order and Recommendations**

For the reasons stated above, the court grants Vera's motion for leave to file a Second Amended Complaint.  Defendants HISD, Mulet, Stipling, and Teran are ordered to file and serve their answers to this complaint within 15 days of service of this order.

The court recommends that the district court grant in part and deny in part defendants' motions to dismiss.  Specifically, the court recommends that (1) Vera's First Amendment retaliatory transfer claim be dismissed with prejudice as to individual defendants Morgan, Gupta, and LaVois; (2)  the First Amendment constructive discharge claim be dismissed with prejudice as to all defendants; and (3) Vera's due process, conspiracy, intentional infliction of emotional distress, and "relief under Texas law" claims be dismissed with prejudice in their entirety as to all defendants.  All other requested relief should be denied.

The parties have ten days from service of this Memorandum and Recommendation to file written objections.  Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.  *See* FED. R. CIV. PRO. 72.

Signed at Houston, Texas on May 11, 2005.


Stephen Wm Smith
United States Magistrate Judge